IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Metro Technologies, LLC;<br>Computer Services and Support, Inc.<br>**Plaintiffs**<br><br>v.<br><br><br>Apple Inc.<br>**Defendant** | Civil No. |

**MOTION TO STAY ARBITRATION AND FOR DECLARATORY RELIEF**

TO THE HONORABLE COURT:

COMES NOW, Metro Technologies, LLC ("Metro") and Computer Services and Support, Inc. ("CSS"), through undersigned counsel, and respectfully states:

1. Plaintiffs Metro Technologies, LLC ("Metro") and Computer Services and Support, Inc. ("CSS") respectfully move this Honorable Court to stay ongoing arbitration proceedings administered by the Judicial Arbitration and Mediation Services (JAMS) under Case No. 5100002902 and to declare the arbitration agreement between Plaintiffs and Apple, Inc., unenforceable as unconscionable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, and Puerto Rico contract law, insofar as it requires Plaintiffs to pay prohibitive fees that effectively deny them access to the arbitral forum.

<u>Jurisdiction and Venue</u>

2. Plaintiffs, Metro Technologies, LLC ("Metro") is a company doing business and operating under the laws of the Commonwealth of Puerto Rico, registration number 339409. Its principal place of residence is 434 Ave. Hostos, San Juan, Puerto Rico.

3. Computer Services and Support, Inc. ("CSS") is a corporation doing business and operating under the laws of the Commonwealth of Puerto Rico, registration number 87534. Its principal place of residence is 434 Ave. Hostos, San Juan, Puerto Rico.

4.      Defendant Apple Inc. is a corporation incorporated and has its principal place of business in Cupertino, California. Its principal place of business is: One Apple Park Way, Cupertino, CA 95014.

5.      This Court has jurisdiction under 9 U.S.C. §§ 2, 3, and 4, which authorize federal courts to determine the enforceability of arbitration agreements and to stay or compel arbitration proceedings. Plaintiffs seek declaratory relief regarding the enforceability of the arbitration clause under § 2, and a stay of arbitration under § 3 of the FAA. Accordingly, this action arises under federal law within the meaning of 28 U.S.C. § 1331.

6.      This Court also has jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiffs Metro Technologies, LLC and Computer Services and Support, Inc. are corporations organized under the laws of the Commonwealth of Puerto Rico, with their principal places of business in San Juan, Puerto Rico. Defendant Apple Inc. is a corporation incorporated under the laws of the State of California with its principal place of business at One Apple Park Way, Cupertino, California.

7.      Under 28 U.S.C. § 1367 this Court also has supplemental jurisdiction under over related claims arising under Article 2.03(a) and 4.44(b)(2) of Puerto Rico Arbitration Act (Law 147-2024), 32 L.P.R.A. §§ 3231b(b) and 3233qq (b) and the Puerto Rico Dealers' Contracts Act, 10 L.P.R.A. § 278 et seq., because they form part of the same case or controversy as the federal claims. Both Puerto Rico statutes provide independent grounds for finding the arbitration agreement unconscionable and unenforceable under local public policy.

8.      Venue is proper in this District because the substantial part of the events giving rise to the claim occurred in Puerto Rico, where Plaintiffs performed their Apple reseller and service operations, and where the harm from Apple's termination and the financial impact of JAMS's fees

are felt.

9. This Motion is brought pursuant to Rule 57 (Declaratory Judgment) and Rule 65 (Injunctive Relief) of the Federal Rules of Civil Procedure, which authorize declaratory and equitable relief where a party seeks clarification of contractual rights under federal law.

Relevant Facts

10. Plaintiffs Computer Services & Support, Inc. ("CSS") and Metro Technologies LLC ("Metro") and have been Apple's long-standing service and reseller partners in Puerto Rico. Each company has operated since its incorporation in 1994 and 2014, respectively, as both reseller and service providers of Apple products, participating in Apple's product sales and repair services. Although Apple's written Apple Authorized Service Provider Agreements (AASPA) formally identify Plaintiffs only as "service providers," Apple's own commercial conduct and written documents for years recognized Plaintiffs as resellers through direct product supply and participation in commercial and educational sales channels.

11. In February 2024, Apple notified Computer Services & Support, Inc. (CSS) of its intent to terminate the Apple Authorized Service Provider Agreement. Apple advised that the Agreement would terminate upon its scheduled expiration on April 30, 2024.

12. Plaintiffs have consistently disputed Apple's stated reasons for termination as pretextual and without just cause, asserting that Apple's audit was made in retaliation against Metro Technologies and Computer Services & Support for complaining Apple's practices. In practice, Apple referred several thousand customers from its major authorized iPhone resellers: AT&T (later Liberty), T-Mobile, and Claro, for pre-screening (including counterfeit verification) of faulty iPhones, AirPods, and iPads and for warranty eligibility verification, so that those resellers could avoid the expense, operational burden, and embarrassment of servicing their own faulty products under Apple's warranty programs.

3

13. Plaintiffs performed these pre-screening and diagnostic services at Apple's direction, charging a modest diagnostic fee to these "bumped" customers for verification of warranty eligibility. In doing so, Plaintiffs not only absorbed the operational costs that Apple and its major resellers sought to avoid but also helped safeguard Apple's brand reputation by ensuring that defective or non-genuine products were properly screened before being attributed to Apple's warranty coverage.

14. Rather than acknowledge that Plaintiffs were protecting both Apple's financial interests and its public image, Apple mischaracterized these legitimate diagnostic fees as improper charges, while pressuring Metro to perform warranty verification services free of charge and misleading customers into believing that Apple would handle all repairs and diagnostics at no cost or inconvenience to them. Apple then used this fabricated narrative as a pretext to terminate the agreements and to conceal the mounting customer service and warranty issues that its major resellers, including AT&T (later Liberty), T-Mobile, and Claro, were confronting under Apple's sales programs.

15. On March 22, 2025, Plaintiffs filed a Demand for Arbitration with JAMS pursuant to the arbitration clause contained in the AASPA. Plaintiffs sought damages exceeding $3,000,000, alleging wrongful termination, breach of good faith and fair dealing, and reputational injury.

16. Plaintiffs paid $2,000.00 filing fee and $59.80 processing fee to commence the arbitration.

17. JAMS formally commenced the arbitration, designating it under the JAMS Comprehensive Arbitration Rules. The AASPA's arbitration clause does not specify any fee-shifting rule or cost allocation, but JAMS applied its default cost structure, which requires each party to pay one-half of the administrative and arbitrator retainers.

18. On August 22, 2025, JAMS invoiced **$35,000.00** to the parties as preliminary

4

advance, requiring Plaintiffs $17,500 as their share of the preliminary retainer, stating that the case "will not proceed" unless the amount was paid. Apple was invoiced separately for its share.

19. The $17,500 retainer represents only an initial portion of the total arbitration fees. The three appointed arbitrators, Hon. Nancy Holtz (Ret.), Ms. Conna Weiner, and Mr. Steven Bauer, each charge <u>daily rates</u> of $10,000, $12,500 and $12,500, respectively, plus an additional 13% case management fee assessed by JAMS.

20. Given their financial condition, Plaintiffs informed JAMS and Apple that the required advance was prohibitively expensive and inconsistent with their ability to pursue arbitration. Plaintiffs advised that Apple's termination of their commercial agreements had left them without the financial means to fund these costs.

21. On May 29, 2025, Plaintiffs wrote to Apple's counsel requesting that Apple agree to a stay of arbitration and mediation to explore a settlement. Apple declined, offering no explanation and instead advancing its counterclaims.

22. On July 8, 2025, Apple opposed Plaintiffs' prior objections to arbitrability, insisting that under JAMS Rules the arbitrators, not a court, must decide the validity of the arbitration clause. However, Apple's response entirely disregarded JAMS Rule 31(a), which expressly allows the parties to agree on a different allocation of fees and expenses.

23. On August 22, 2025, JAMS issued a Notification of Tripartite Panel of Arbitrators and simultaneous invoices to both parties for $17,500 each, representing a total retainer of $35,000.

24. On September 12, 2025, Plaintiffs, through counsel, sent a formal letter to Apple requesting that Apple assume full responsibility for the arbitration fees. Plaintiffs argued that the agreements contained no fee-shifting clause, that JAMS was applying its default cost structure, and that payment of $17,500 was economically impossible for small reseller/service providers.

25. That same day, Plaintiffs notified JAMS, enclosing their letter to Apple, and

5

requested that the scheduled October 1, 2025, preliminary conference be held in abeyance pending resolution of the cost issue. Plaintiffs cited JAMS Rule 31(a), which allows the parties to agree on a different fee allocation, and explained that fairness required Apple to bear the fees until the court determined the enforceability of the clause.

26. Apple never responded to the September 12 request, nor did it offer alternatives to plaintiffs or share costs beyond its own $17,500 contribution.

27. On September 13, 2025, JAMS issued an order directing Apple to respond to Claimants' position by September 15. Apple failed to comply.

28. On September 16, 2025, Arbitrator Steven Bauer granted an extension for Apple to address the issue, but no alternatives or agreement followed.

29. On October 7, 2025, JAMS sent a Statement of Account and Final Notice, again demanding the $17,500 payment and explicitly warning that the case "will not be worked on until payment is received." The notice further stated that any other party could assume payment responsibility and that nonpayment could preclude a Plantiffs from presenting its claims.

30. As of this filing, JAMS has suspended all case activity due to nonpayment, and Plaintiffs remain unable to fund the arbitration. Plaintiffs' inability to pay the $17,500.00 retainer and the prospect share of additional $35,000.00 daily arbitrator fees, has rendered the arbitral forum inaccessible.

31. The imposition of such costs, without any contractual fee-shifting provision or consideration of Plaintiffs' financial circumstances, constitutes substantive unconscionability, as it renders any attempt by Plaintiffs to seek remedies for Apple's breaches illusory and unenforceable by making the arbitral forum effectively accessible only to Apple, a party with vastly superior financial resources.

32. Moreover, the arbitration clause is procedurally unconscionable because it was

drafted solely by Apple in a non-negotiable, adhesion contract, requiring small reseller/service provider to arbitrate in California under JAMS's commercial rules, a forum they cannot afford to access. Plaintiffs' repeated objections and proposals for mediation demonstrate good-faith efforts to resolve this dispute, while Apple's refusal to negotiate or bear reasonable costs underscores the inequitable and oppressive nature of the arbitration process as applied.

33. The AASA, as drafted by Apple, are contracts of adhesion imposed on small reseller and service providers with no opportunity for negotiation. Plaintiffs were required to accept Apple's standard terms to continue operating as authorized service providers and resellers in Puerto Rico.

34. Also, the AASPA include provisions that directly contravene the public policy protections of Puerto Rico's Dealers' Contracts Act (Act 75). In particular, Section 15.1 allows Apple to terminate the relationship "at any time without cause," a clause expressly forbidden by Act 75 § 278a.

35. The AASPA further attempt to absolve Apple of its statutory obligations under Puerto Rico's dealership laws by including in Section 14.4 a clause requiring the service provider to "waive any rights or claims under franchise or dealership laws." Such a waiver directly contravenes Act 75 § 278b-3, which imposes upon principals like Apple a non-waivable duty to respect the public policy protections afforded to dealers and distributors in Puerto Rico. By compelling dealers to waive those protections, Apple seeks to avoid its statutory responsibility to act in good faith and to maintain the commercial relationship except for just cause, an obligation that cannot be contractually disclaimed or avoided.

36. The AASPA designate Delaware law as controlling and require arbitration in San Francisco, California, even though the agreements expressly limit the "territory" of performance to Puerto Rico and Delaware has no connection to performance or plaintiff. Under federal law,

choice-of-law clauses are presumptively valid, and the Federal Arbitration Act (FAA) generally respects the parties' contractual autonomy to select a governing law or arbitral forum. However, the FAA does not preempt the operation of Puerto Rico's Dealers' Contracts Act (Act 75) because this case involves substantive statutory rights, not hostility toward arbitration itself. By requiring Metro and CSS to arbitrate in California under Delaware law, Apple attempts to circumvent its statutory obligation under §278b-2 of Act 75, to impose a choice of law which imposes upon principals a non-waivable duty to resolve disputes with Puerto Rico dealers under Puerto Rico law and within contract terms. This contractual structure represents an effort by Apple to avoid those substantive obligations and to deprive Plaintiffs of the legal protections that the state deemed essential to public order. Accordingly, the Delaware law and out-of-state arbitration provisions are contrary to Puerto Rico's fundamental public policy and therefore null and void.

37. The agreements further authorize Apple to unilaterally modify essential terms through mere notice by electronic posting (Section 16.6), granting Apple broad discretion to alter covenants, performance requirements, and contractual obligations without the dealers' consent. Such conduct violates Apple's statutory obligation under Act 75 § 278a to preserve the stability of its dealer relationship and to refrain from any act that impairs or undermines the established service provider arrangement except for just cause. By reserving to itself unilateral control over the essential elements of the commercial relationship, Apple breaches this non-waivable duty imposed by Puerto Rico law.

38. This duty of fairness and stability is also recognized under federal common law, which implies in every commercial contract a covenant of good faith and fair dealing that prohibits a party from exercising contractual discretion in a manner that frustrates the reasonable expectations of the other. Apple's unilateral control over essential terms contravenes this implied covenant and undermines the mutual trust necessary for the performance of long-term commercial

relationships. The Federal Arbitration Act does not preempt this general principle of contract law, as it concerns substantive obligations of fairness, not hostility toward arbitration.

39. The combination of these sections, choice-of-law, termination without cause, waiver of statutory rights, unilateral modification authority, and out-of-state arbitration, renders the AASPA contrary to Puerto Rico's public order and unenforceable under both the state's Dealers' Contracts Act and Arbitration Act (32 L.P.R.A. § 3201 et seq.)**.** These provisions also conflict with federal common law principles of contract**,** which impose an implied covenant of good faith and fair dealing in every commercial agreement and prohibit a party from exercising contractual discretion in a manner that defeats the other party's justified expectations. Accordingly, the AASPA are inconsistent not only with Puerto Rico's statutory policy but also with federal law's fundamental requirement of fairness in contractual performance.

40. Plaintiffs therefore seek a declaration that the AASPA's arbitration clauses and related limitations of liability are invalid or void ab initio, as they reflect Apple's failure to comply with its statutory and contractual obligations to conduct its commercial relationships in good faith and in accordance with Puerto Rico's mandatory public policy.

41. By imposing provisions obtained through unequal bargaining power and exercised in a manner inconsistent with fair dealing, Apple seeks to evade the substantive duties imposed on principals by state law and the implied covenant of good faith recognized under federal contract law. Both Puerto Rico statutes and federal common law prohibit enforcement of contractual terms that allow a dominant party to frustrate or nullify the other's ability to vindicate legitimate claims, rendering such arrangements unenforceable as contrary to public policy.

For the reasons set forth above, Apple's conduct and the contractual provisions it drafted reflect a deliberate effort to evade the substantive duties imposed upon principals under federal and state law. By imposing terms obtained through unequal bargaining power and fair dealing,

9

Apple seeks to shield itself from accountability for its own breaches while depriving Plaintiffs of any meaningful avenue to vindicate their rights. Accordingly, Plaintiffs assert the following causes of action.

i. **First Cause of Action: The Arbitration Clause Is Unenforceable Due to Prohibitive Costs**

42. The arbitration clause, as applied, is unenforceable because it imposes prohibitive costs that deny Plaintiffs meaningful access to the arbitral forum. JAMS has demanded a $17,500 retainer from Plaintiffs as a prerequisite to even begin the case, despite the absence of any fee-shifting or cost allocation clause in the Apple Authorized Service Provider Agreements (AASPA).

43. JAMS has confirmed in multiple notices that the case "will not be worked on until payment is received," thereby conditioning access to arbitration upon an upfront expenditure that Plaintiffs cannot meet. The three-member panel's daily rates of up to $12,500 per arbitrator, plus a 13% administrative fee, further demonstrate that the cost of proceeding operates as a shield protecting Apple's unilateral termination, effectively depriving Plaintiffs, who have already lost their revenue streams as a result of Apple's breach of contract, of any meaningful opportunity to pursue relief or hold Apple accountable for its conduct.

44. In Green Tree Financial Corp.–Alabama v. Randolph, 531 U.S. 79 (2000), and Awuah v. Coverall North America, Inc., 554 F.3d 7 (1st Cir. 2009), the courts held that arbitration clauses are unenforceable where the costs are "prohibitively expensive" for the weaker contracting party. Likewise, the court has recognized that arbitration cannot stand when it creates an "illusory forum" accessible only to one side.

45. Here, Apple, a multinational corporation with vast resources, can easily advance these costs, while Plaintiffs cannot. The result is a process that operates only for the party with superior economic power, contradicting the purpose of both the Federal Arbitration Act (9 U.S.C. § 2), which contemplate equitable access to arbitration.

46. Because JAMS has suspended all proceedings for nonpayment and Apple continues to refuse to assume Plaintiffs' share of the required fees, the arbitration process is now in jeopardy of being dismissed in its entirety. This outcome would effectively deny Plaintiffs any forum in which to pursue their claims, rendering the arbitration clause illusory and unenforceable. Accordingly, the clause must be declared invalid under the Federal Arbitration Act (FAA) and fundamental principles of unconscionability, as it creates a procedure that operates only for the benefit of Apple while extinguishing Plaintiffs' ability to seek redress.

    ii.    **Second Cause of Action: Puerto Rico Law Provides Independent Grounds to Render the Apple Authorized Service Provider Agreement Unenforceable**

47. Independently of federal law, Puerto Rico's statutory and civil law doctrines render the arbitration clause and key provisions of the AASPA void ab initio as contrary to public order.

48. Under the Puerto Rico Dealers' Contracts Act, 10 L.P.R.A. § 278 et seq. (Act 75-1964), any provision allowing a principal to terminate a dealership or distribution relationship "without just cause" or compelling the dealer to waive statutory rights is null and void (§ 278a, § 278b-3). Section 14.4 of the AASPA expressly waives "any rights or claims under franchise or dealership statutes," and Section 15.1 authorizes termination "at any time without cause." These provisions are directly prohibited by Act 75 and therefore unenforceable.

49. Likewise, Section 16.1 of the AASPA designates Delaware law, and Section 16.2.1 mandates arbitration in San Francisco, California, even though the business relationship was formed, performed, and exclusively operated in Puerto Rico. By imposing these provisions, Apple seeks to evade its substantive statutory obligations under Act 75 § 278b-2, which requires principals to resolve disputes with Puerto Rico dealers under Puerto Rico law and within Puerto Rico's jurisdiction. This obligation reflects a matter of substantive rights, not hostility toward arbitration. The Federal Arbitration Act does not preempt Puerto Rico's enforcement of such non-

11

waivable protections, and Apple remains bound to comply with them in accordance with both federal and state law.

50. The Puerto Rico Arbitration Act (Law 147-2024) expressly authorizes courts to refuse enforcement of arbitration agreements or awards that are unconscionable, obtained under inequitable conditions, or contrary to Puerto Rico's public order. See Art. 2.03(a), 4.44(b)(2)(ii). The combination of prohibitively high costs, the application of foreign law, and the imposition of an out-of-state arbitration forum violates Puerto Rico's statutory guarantee of local access to justice and undermines the territory's public policy ensuring that arbitration remains a fair and accessible mechanism for dispute resolution.

51. In addition, under Articles 1232, of the Puerto Rico Civil Code, 31 L.P.R.A. § 9753 a contract is void if its terms are "contrary to law, morals, or public order." Apple's adhesion contracts left Plaintiffs with no genuine choice but to accept oppressive terms as a condition of continuing to operate their Apple-authorized businesses, vitiating their consent under Puerto Rico law.

52. The cumulative effect of these above identified contract provisions: termination at will, waiver of statutory protections, unilateral modification authority, and mandatory out-of-state arbitration, renders the AASPA contrary to Puerto Rico's strong public policy protecting dealers and small businesses from abuse by multinational suppliers.

WHEREFORE, Plaintiffs Metro Technologies, LLC and Computer Services and Support, Inc. respectfully request that this Honorable Court:

a. Declare that the arbitration clause contained in the Apple Authorized Service Provider Agreements is unenforceable to the extent it requires Plaintiffs to pay prohibitively expensive fees as a precondition to arbitration;

b.  Declare that the arbitration and governing-law provisions of the AASPA are void under the Puerto Rico Dealers' Contracts Act and the Puerto Rico Arbitration Act as contrary to public order;

c.  Stay and enjoin the ongoing JAMS arbitration (Ref. 5100002902) under 9 U.S.C. § 3;

d.  Declare that, upon finding the arbitration clause unenforceable, this action shall proceed before this Court as the proper forum for adjudication of the parties' dispute, including all contractual and implied-in-fact claims arising from their commercial relationship; and

e.  that Plaintiffs are entitled to a trial by jury on all issues so triable under federal law.

f.  Grant any other and further relief this Court deems just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on October 10, 2025

> s/ Carlos M. Calderón Garnier
> Carlos M. Calderón Garnier
> Attorney for the Defendant
> USDC-PR No. 221512
> 1605 Ave. Ponce de León, Suite 44
> San Juan, P.R. 00909
> Tel. (787) 763-3311
> Fax (787) 764-8072
> E-mail: info@calderon.law